UNITED STATES of America

v.

Michael NORBERTO, Robin Hannson, and Christine Forsythe, Defendants.

No. 04 CR 328(ADS)(ARL).

United States District Court, E.D. New York.

June 13, 2005.

Roslynn R. Mauskopf, United States Attorney, Eastern District of New York by Geoffrey R. Kaiser, Assistant United States Attorney, Central Islip, NY, for U.S.

Morvillo, Abramowitz, Grand, Iason & Silberberg P.C. by Robert J. Anello, Esq., Richard F. Albert, Esq., Richard C. Tarlowe, Esq., New York City, for Michael Norberto.

Jeffrey W. Waller, LLC by Jeffrey W. Waller, Esq., Hauppauge, NY, for Christine Forsythe.

## ORDER

SPATT, District Judge.

This case involves allegations that the defendants Michael Norberto ("Norberto"), Christine Forsythe ("Forsythe"), and Robin Hansson ("Hansson") operated a gambling enterprise in the United States that sold shares in a lottery conducted by the Government of Spain to customers around the world, in violation of anti-gambling laws.

Pending before the Court are motions by Norberto and Forsythe (the "Moving Defendants" or the "Defendants") to dismiss the Indictment on the grounds that (1) the Prosecution lost two boxes of allegedly material documents that the Govern-

ment had previously determined to be discoverable; and (2) the Prosecution violated the Treaty Between the United States and Canada on Mutual Legal Assistance in Criminal Matters, Mar. 18, 1985, U.S.-Can., 24 I.L.M. 1092 ("Canadian MLAT" or "Treaty").

██ As to the lost boxes, at a status conference on October 29, 2004, the Court ordered the Prosecution to reconstruct the contents of these boxes with "details, not just generalities." The Court also warned that the Prosecution

> will have to reconstruct what was in those two boxes. And if it is not satisfactory we will have to have a hearing, number one, on what were these missing documents. The defendants have no burden here at all. They can sit back and let you wallow around in this thing.

In response to the Court's October 29, 2004 order, in a letter to the Court dated November 29, 2004, Assistant United States Attorney ("AUSA") Geoffrey R. Kaiser advised that:

> Box 1 contained records of a government witness named Richard Hamilton who performed graphic art work on material used by the defendants and their co-conspirators for the illegal lottery scheme described in the indictment. Fortunately, the Government expects to be able to recover copies of these records from the witness, and will produce the records as soon as they are recovered and duplicated. None of these records was presented to the Grand Jury, and the pending charges do not depend on them in any way.
>
> Box 5 contained records obtained from the accounting firm used by Robin Hansson, Kass & Co., and those records have been lost. As with the records in Box 1, none of these records was presented to the Grand Jury, and the pending charges do not depend on them in

any way. A description of the missing records follows:

> Profile Direct Inc. Cash Receipts and Cash Disbursements for the period ending 6/30/96
>
> Profile Direct Inc. Account receivable schedule for the period ending 6/30/96
>
> Profile Direct Inc. 1099 dated 12/31/96
>
> Profile Direct Inc. Dissolution Return for the period 7/1/97–9/30/97
>
> Profile Direct Inc. Sales Tax records
>
> Profile Direct Inc. Client Correspondence for 1997
>
> Profile Direct Inc. Payroll Taxes for 1997
>
> Profile Direct Inc. Permanent File
>
> Profile Direct Inc. Bad Debt File
>
> Profile Direct Inc. Payroll Taxes for 1996
>
> Profile Direct Inc. Tax returns for the period ending 6/30/94
>
> Profile Direct Inc. Trial Balance for the period ending 6/30/94
>
> Profile Direct Inc. Source Journals for the period ending 6/30/96
>
> Profile Direct Inc. Trial Bal. General Ledger, Audit Work Papers for the period ending 6/30/97
>
> Profile Direct Inc. Trial Bal., General Ledger, Audit Work Papers for the period ending 6/30/94
>
> Profile Direct Inc. Tax returns for the period ending 6/30/96.

Letter from Kaiser to Court dated November 29, 2004.

As to "Box 1," at oral argument on June 10, 2005, the Court was told that the contents of Box 1 were made available to the Defendant. In any event, according to the Defendants, there remains open questions as to the manner in which the Prosecution was able to reconstruct, and/or determine the contents of the box given the fact that

the original documents contained in the box were lost. The Prosecution has not provided the Court with any sworn declaration and/or statement regarding its efforts to reconstruct the contents of this box. The Court notes that the Prosecution had previously informed the Court that it believed that the missing documents were "originals which in fact cannot be reconstructed."

With regard to Box 5, the description of the missing contents provided by AUSA Kaiser in the November 29, 2004 letter is different from that which was provided by former AUSA Robert P. LaRusso in his October 29, 2004 letter to the Court. On that date, Mr. LaRusso described the contents of the missing box as follows:

> [O]ne of the missing boxes contained records of a government witness Richard Hamilton who performed graphic art work on material used by the defendants and their coconspirators for the illegal lottery outlined in the indictment. The second box was one of several received from Mr. Jeffrey Waller on behalf of Value Stores. During the grand jury investigation, a subpoena was served for Value Store records, and Mr. Waller responded for the company.

Letter from LaRusso to Court dated Oct. 29, 2004.

The Defendants argue that the above mentioned documents are "unique documentary evidence" that is crucial to their defense. The Defendants further contend that without this evidence, they will be deprived of a fair trial.

In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court stressed the importance of evidentiary disclosures by the prosecution of evidence favorable to the accused:

> the suppression by the prosecution of evidence favorable to accused upon request violates due process where the

> evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution. The principle [underlying this rule] ... is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused.

*Brady,* 373 U.S. at 87, 83 S.Ct. 1194; *United States v. Bakhtiar,* 994 F.2d 970, 975 (2d Cir.1993).

 With respect to the Defendants contention that their defense is prejudiced by the loss of documents, the Second Circuit has instructed

> [t]o establish a violation of the right to present a defense based on lost evidence, a defendant must show that the evidence was material and exculpatory, and that it was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means ... Moreover, unless the defendant can show bad faith on the part of the state, failure to preserve potentially useful evidence does not constitute a denial of due process of law.

*Buie v. Sullivan,* 923 F.2d 10, 11–12 (2d Cir.1990) (internal quotations and citations omitted); *See Bakhtiar,* 994 F.2d at 974 (2d Cir.1993) ("While we agree that the government was sloppy in its handling of this evidence, it appears that the missing material would have been of little or no use to the defense.... [T]he loss did not deprive ... defendant of a fair trial."); *United States v. Rahman,* 189 F.3d 88, 139 (2d Cir.1999) ("When it occurs, the Government's loss of evidence may deprive a defendant of the right to a fair trial. Whether that loss warrants sanctions depends on the Government's culpability for the loss and its prejudicial effect. Before these factors become relevant, however, the record must first show that evidence has been lost and that this loss is charge-

able to the State." (internal quotation and citations omitted)).

Based on the record presently before the Court, without an accurate description of the above mentioned discovery material, the Court is unable to make a determination as to the relevancy of the documents in question and as to the potential prejudice that the Defendants might face.

Accordingly, the Court respectfully refers this matter to United States Magistrate Judge Arlene R. Lindsay to conduct a reconstruction hearing as to the nature and content of the two boxes of documents in question and to issue a Report and Recommendation to that effect and the potential prejudice, if any, the Defendants will suffer as a result of the loss of the materials in question.

Turning to the second ground for the Defendants' motion to dismiss, the Defendants contend that the Prosecution's alleged noncompliance with the Canadian MLAT warrants dismissal of the Indictment. This Treaty "obligates the two governments to provide 'mutual legal assistance in all matters relating to the investigation, prosecution and suppression of offences.'" *In re Commissioner's Subpoenas,* 325 F.3d 1287, 1290 (11th Cir.2003) (quoting Treaty, art. II, ¶ 1). The Treaty "provides for a broad range of [mutual] cooperation in criminal matters ... including ... (1) the taking of testimony or statements of witnesses; (2) the provision of documents, records, and evidence; (3) the execution of requests for searches and seizures; (4) the serving of documents; and (5) the provision of assistance in proceedings relating to the forfeiture of the proceeds of crime, restitution to the victims of crime, and the collection of fines imposed as a sentence in a criminal prosecution." *Id.* at 1290 n. 1 (citation omitted). Paragraph 2 of Article IX states that "the Requesting State shall not disclose or use

information or evidence furnished for purposes other than those stated in the request without the prior consent of the Central Authority of the Requested State."

The Defendants contend that the Prosecution used certain documents obtained from Canada pursuant to two MLAT requests and that the Prosecution's use of these documents to secure the Indictment was outside the scope of the purposes stated in the request. In particular, the Defendants contend that the purposes stated in the request did not include Ms. Forsythe, for certain enumerated offenses. Furthermore, the MLAT request did not refer to the charges brought pursuant 18 U.S.C. Sections 1301, 1302, 1952, or 1953—the underlying offenses on which the indictment is based.

In response, the Prosecution disputes the factual contentions made by the Defendants. In that regard, the Prosecution contends that the gambling charges were not obtained on the basis of the Canadian documents.

Given the nature of this factual dispute, the Court also respectfully refers this issue to Judge Lindsay to determine whether there has been a violation of the Treaty, and if so, to determine the consequences of that violation.

Based on the foregoing, it is hereby

**ORDERED,** that this matter is respectfully referred to United States Magistrate Judge Arlene R. Lindsay to conduct a reconstruction hearing as to the nature and content of the two boxes of documents in question and to issue a Report and Recommendation to that effect and the potential prejudice, if any, the Defendants will suffer as a result of the loss of the materials in question; and it is further

**ORDERED,** that Judge Lindsay is respectfully directed to hold a hearing, if

necessary, and issue a Report and Recommendation as to whether there has been a violation of the Treaty, and if so, to determine the consequences of that violation.

**SO ORDERED.**